IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DARRYL K. ROBERTS,

        Plaintiff,                              Case No.: 3:12-CV-340

vs.

COMMISSIONER OF                        District Judge Walter H. Rice
SOCIAL SECURITY,                       Magistrate Judge Michael J. Newman

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S SELECTION OF APRIL 23, 2008 AS PLAINTIFF'S DISABILITY ONSET DATE BE REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR AN AWARD OF DIB AND/OR SSI BENEFITS WITH AN ONSET DATE OF FEBRUARY 8, 2006; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not disabled prior to April 23, 2008, and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI") before that date. This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 10), Plaintiff's Reply (doc. 11), the administrative record, and the record as a whole.[2]

At issue in this case is the previously established disability onset date. Plaintiff was granted benefits commencing April 23, 2008. He contends that he should have, instead, been granted benefits on an earlier date. For the reasons more fully set forth below, the Court agrees,

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the administrative record will refer only to the transcript page number as "Tr." Additionally, Plaintiff's pertinent medical records have been adequately summarized in his Statement of Errors and the administrative decision, *see* doc. 9 at PageID 61-71; tr. 368-78 and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

and recommends that Plaintiff's disability onset date be amended to reflect a February 8, 2006 onset.

# I.

Plaintiff filed applications for DIB and SSI on April 7, 2005, alleging a disability onset date of July 20, 2004. Tr. 55-57, 331-32. Plaintiff claims he is disabled due to a number of impairments including, *inter alia*, arthritis, knee pain, lower back pain, depression, and anxiety. Tr. 66.

After initial denials of his applications, Plaintiff received a hearing before ALJ Daniel Shell on March 18, 2008. Tr. 11-21. ALJ Shell issued his decision on August 20, 2008, finding that Plaintiff was not disabled as defined by the Social Security Act. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 30. Plaintiff then commenced action in this court for judicial review of ALJ Shell's decision. On March 1, 2011, United States District Judge Timothy S. Black remanded the case back to the Commissioner under Sentence Four for further proceedings including psychological and orthopedic evaluations. Tr. 380-94. Upon remand, a subsequent hearing was held on November 15, 2011 before ALJ Amelia Lombardo (hereafter "ALJ Lombardo" or "the ALJ"). Tr. 540-62. ALJ Lombardo issued a partially favorable decision on December 9, 2011, finding that Plaintiff became disabled on April 23, 2008. Tr. 379. Specifically, ALJ Lombardo's findings were as follows:

1. The claimant meets the insured status of the Social Security Act through March 31, 2005;

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*);

3. Since the alleged onset date of disability, July 20, 2004, the claimant has had the following severe impairments: bilateral knee problems; rotator cuff tear of the right shoulder; mild osteoarthritis of the lumbrosacral

        spine; the residuals of a right ankle fracture; depression; and anxiety (20 C.F.R. §§ 404.1520(c) and 416.920(c));

4. Since the alleged onset date of disability, July 20, 2004, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")][3] to perform light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he was limited to jobs that would not have required reaching overhead with the right upper extremity. He was further limited to jobs that would not have required climbing, stairs, or ladders. He was restricted to work that would not have required kneeling or crawling. He was further restricted to low stress, simple, repetitive tasks, that would not have required assembly line production quotas or fast pace;[4]

6. Since July 20, 2004, the claimant has been unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965);

7. Prior to the established disability onset date, the claimant was a younger individual age 18-44. The claimant's age category has not changed since the established disability onset date (20 C.F.R. §§ 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964);

9. Prior to April 23, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules

---

[3] A claimant's RFC is the most physical exertion a claimant can perform in the workplace despite his or her impairments and any related symptoms, such as pain. 20 C.F.R. § 416.945(a). The assessment is based on all relevant evidence in the record and the claimant's ability to meet the physical, mental, sensory, and other requirements for work as described in 20 C.F.R. § 416.945(b), (c), and (d).

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 416.967. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or….sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* at § 416.967(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* at § 416.967(a).

        [("the Grid")] as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on April 23, 2008, the claimant has not been able to transfer job skills to other occupations (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Prior to April 23, 2008, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a); [and]

11. As of April 23, 2008, the claimant has been unable to perform even sedentary work, the most restrictive category of work defined for Social Security purposes, on a regular and continuing basis. Beginning on April 23, 2008, considering the claimant's age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).

Tr. 369-79 (brackets and footnotes added).

        Thereafter, the Appeals Council denied Plaintiff's request for review, making ALJ Lombardo's findings the final administrative decision of the Commissioner. Tr. 358-60; *see Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.,* 480 F.3d 432, 435 (6th Cir. 2007).

## II. APPLICABLE LAW

### A. Standard of Review

        The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007).[5] In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

---

[5] The remaining citations herein will identify the pertinent SSI statutes and regulations with full knowledge of the corresponding DIB provisions.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which the Commissioner can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for SSI, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

    2.      Does the claimant suffer from one or more severe impairments?

    3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

    4.      Considering the claimant's RFC, can he or she perform his or her past relevant work?

    5.      Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition.  *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).  During the first four steps of the five-step sequential analysis, the claimant has the burden of proof.  42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920.  Should the claimant meet all requirements of the previous steps, at Step 5 the burden shifts to the Commissioner to establish that the claimant retains an RFC to perform other substantial gainful activity existing in the national economy.  *Key*, 109 F.3d at 274.

### III.

The procedural history of this matter is worth noting, and bears repeating.  Plaintiff's initial disability application was denied, and he appealed to this Court.  On appeal, Judge Black reversed the ALJ and remanded this case under the Fourth Sentence of 42 U.S.C. § 405(g) for a new administrative hearing.  Tr. 394.  In the Remand Order, Judge Black found that the ALJ did not provide "sufficient medical evidence to support his RFC finding" beyond "rejecting the opinion of [Plaintiff's] treating physician," Kwasi A. Nenonene, M.D.  Tr. 391.  While the Commissioner did proceed to re-hear this matter on remand, and the record reflects that a new administrative hearing was held before ALJ Lombardo, the record also demonstrates that ALJ

Lombardo made similar errors to the first ALJ. Specifically, she failed to correctly apply the treating physician rule, and relied on the record-reviewing physician, William Newman, M.D.,[6] in declining to grant deference to Plaintiff's treating physician. Tr. 375. Where the District Court issues a specific directive to the ALJ, the same errors should not be committed on remand. *See, e.g.*, *Spaugy v. Colvin*, No. 3:12-CV-81, 2013 WL 3350842, at *9 (July 3, 2013) (Ovington, M.J.), *adopted by* 2013 WL 3835425 (Rice, J.) (finding that "because the ALJ's second decision did not contain full and adequate reasons for rejecting [Plaintiff's treater's opinion], the decision fails to comply with [the] [R]emand Order"). In such instances, reversal is appropriate.[7] *Id.*

### A. The Treating Physician Rule

The treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

> 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"

*Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treater's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for

---

[6] Dr. Newman is of no relation to the undersigned.

the weight given to the claimant's treating source's opinion." *Blakely*, 581 F.3d at 406. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07. When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. at 407.

The Court acknowledges that an ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 416.927; *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

---

[7] In support of his argument that the ALJ committed reversible error on remand, Plaintiff contends the ALJ improperly analyzed reports by his treating physician and also erred in not finding him disabled under the Listings. In light of the Court's discussion *infra*, the Listings argument need not be addressed.

### B. Dr. Nenonene's Opinion

Plaintiff began a treatment relationship with primary care internist, Dr. Nenonene in January 2006. Tr. 264. During that time, Dr. Nenonene treated Plaintiff for bilateral knee pain, lower back pain, and right shoulder pain. Tr. 298-99, 315-28. On February 8, 2006, Dr. Nenonene opined that Plaintiff was unable to work due to his pain, depression, and anxiety. Tr. 295. On February 25, 2006, Plaintiff underwent MRI imaging of both knees. Tr. 262-63. The results were compatible with Dr. Nenonene's assessment. The left knee showed chondrocalcinosis with thickening of the medial collateral ligaments,[8] prominent joint spurring, moderately large joint effusion,[9] and popliteal cysts containing debris.[10] Tr. 263. The right knee revealed a prominent meniscal tear as well as joint effusion, a large zone of "chondromalacia with possible osteonecrosis,"[11] signal abnormality, and possible Osgood-Schlatter disease. Tr. 262.

On August 10, 2006, Dr. Nenonene opined that Plaintiff could stand/walk for just one out of every eight hours; was markedly limited in his ability to push/bull, bend, reach, and handle; and could lift no more than ten pounds. Tr. 265. Dr. Nenonene again, opined that Plaintiff was unemployable. *Id.* Dr. Nenonene based this assessment on physical examinations, consultations, medical records, and Plaintiff's recent MRI results. *Id.* In April 2007, Dr. Nenonene again assessed Plaintiff as unable to sustain full time employment. Tr. 293-94. Dr. Nenonene completed a final assessment via interrogatories in March 2008, in which he found a

---

[8] Chondrocalcinosis is an arthritis variant characterized by deposits of calcium pyrophosphate dehydrate crystals in one or more joints that results in damage to the affected joints. *Stedman's Medical Dictionary* 368 (28th ed. 2006).

[9] Joint effusion is the presence of increased intra-articular fluid in the joint. It results in inflammation, and can call for a draining of the fluid from the affected joint. *Stedman's Medical Dictionary* 616 (28th ed. 2006).

[10] Popliteal cyst is a swelling in the space behind the knee, causing stiffness and knee pain. *Stedman's Medical Dictionary* 1541 (28th ed. 2006).

worsened condition and determined Plaintiff was unable to complete the tasks necessary to sustain employment. Tr. 311.

### C. The ALJ Erred in Rejecting Dr. Nenonene's Opinion

Plaintiff disputes ALJ Lombardo's established disability onset date of April 23, 2008. Doc. 9 at PageID 60. He asserts that his treating physician's opinion should have been adopted and a disability onset date of February 8, 2006 established. *Id.* at PageID 76. The Court agrees. In rejecting Dr. Nenonene's opinion, the ALJ erred by failing to adequately analyze Dr. Nenonene's opinion under the treating physician rule, and by continuing to rely on Dr. Newman's assessment determining Plaintiff's RFC.

The ALJ did not afford Dr. Nenonene's opinion "controlling, or even deferential weight." Tr. 374. The ALJ found Dr. Nenonene provided "no objective support for his medical opinion, and the opinion is not supported by the overall medical record prior to April 23, 2008." *Id.* In making this determination, the ALJ relied on the fact that Dr. Nenonene's opinion was not consistent with that of record-reviewing medical expert, Dr. Newman.[12] Tr. 375. The ALJ found Dr. Newman's assessment of Plaintiff's medical records should be afforded more deference than Plaintiff's treater, stating:

> [Dr. Nenonene's] opinion is inconsistent with that of William Newman, an orthopedic specialist. It is found that the opinion of Dr. Newman, an orthopedic specialist, as to the claimant's functional ability prior to the onset date, should be

---

[11] Osteonecrosis is the death of bone in mass, caused by reduced blood flow in the joints. *Stedman's Medical Dictionary* 1391 (28th ed. 2006).

[12] There are three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating sources. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). As a general matter, an opinion from a treating source is given the most weight, and an opinion from an examining source is given more weight than that from a non-examining source. *Id.* In weighing all medical opinions, the ALJ must consider the following factors: the examining relationship (if any); the length, nature and extent of the treatment relationship (if any); supportability of the opinion; consistency of the opinion with the record as a whole; the specialization of the source; and any other relevant factors which tend to support or contradict the opinion. *Id.* at 515; 20 C.F.R. § 416.927(c).

give more weight than that of Dr. Nenonene, a primary care internist, whose opinion appears to rely on the subject complaints of the claimant.

*Id.* Dr. Newman opined that Plaintiff was capable of sedentary work, and his impairments did not meet or medically equal any of the Listings. Tr. 371. He based his determination on a review of Plaintiff's medical records, including heavy reliance on an assessment completed in 1999. *Id.*

Dr. Nenonene was in a treatment relationship with Plaintiff for two years during the alleged period of disability. Tr. 300. Dr. Nenonene treated Plaintiff for many conditions including, knee pain, shoulder pain, and depression. Tr. 301. The record reflects that Dr. Nenonene saw Plaintiff on at least thirteen occasions during the treatment period, nearly every two months. Tr. 315-28. During that time, Dr. Nenonene found Plaintiff suffered from an arthralgic gait, knee crepitis, tenderness, and muscle weakness, among other conditions. Tr. 298-99, 315-28. Additionally, Dr. Nenonene assessed Plaintiff's physical capabilities on multiple occasions, consistently finding him unable to sustain full-time employment. Tr. 522-31. Dr. Nenonene based these opinions on his extensive treatment relationship with Plaintiff, as well as physical examinations and consultations, Plaintiff's medical records, and MRI results. Tr. 265.

Aside from a general statement that Dr. Nenonene's opinion was "not supported by the overall medical record prior to April 23, 2008," ALJ Lombardo does not offer further reasoning for her discrediting of Dr. Nenonene's opinion, beyond its inconsistency with Dr. Newman's assessment. Tr. 375. In *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), the Sixth Circuit clarified the analysis an ALJ must undertake when considering the opinions of treating doctors in light of conflicting opinions of non-treating and non-examining sources:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the non-treating and non-examining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that

>opinion. Such a rule would turn on its head the regulations' presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with non-treating, non-examining sources.

*Id.* at 377. This clarification is applicable here. The "other source" in this case -- record-reviewing physician, Dr. Newman -- was used to discredit the opinion of Plaintiff's treating physician. As Judge Black noted in his previous remand of this case:

>Dr. Newman relied in part upon [a physician's] opinion, who evaluated Plaintiff in 1999 -- long before Plaintiff's [alleged onset date] . . . . Accordingly, the Court finds that the ALJ gave improper weight to the findings of an orthopedic surgeon who simply reviewed the records and appeared to give significant weight to irrelevant medical records from 1999.

Tr. 390-91 (brackets added).

In a cursory manner, the ALJ found that Dr. Nenonene "provided no objective support for his medical opinion" and "the opinion is not supported by the overall medical record." Tr. 374. The ALJ listed the "good reasons" factors as a precursor to her discussion of Dr. Nenonene's opinion, but did not go on to actually apply them to the treatment relationship. Tr. 374. Instead, the ALJ relied on Dr. Newman's differing opinion as her main reason for refusing to give Dr. Nenonene's opinion controlling weight. In so doing, the ALJ failed to adequately identify the "conflicting substantial evidence" to warrant rejection of the treating physician's opinion. 20 C.F.R. § 416.927(c)(2). As such, the ALJ's analysis deprives this Court of an opportunity to meaningfully review whether the treating-physician rule was properly applied. *Wilson*, 378 F.3d 541.

### D. Plaintiff is Entitled to an Award of Benefits

As discussed above, and in the previous opinion remanding this case, Dr. Newman's opinion in and of itself is not an appropriate basis upon which to disregard Dr. Nenonene's opinion. *Gayheart*, 710 F.3d at 377; Tr. 390. The ALJ does not cite other evidence in the record that conflicts with Dr. Nenonene's opinion, and does not correctly apply the good reasons

requirement.  ALJ Lombardo's established onset date, April 23, 2008, coincides with x-ray imaging performed on that date and a diagnosis of bilateral tricompartmental knee osteoarthritis of the left knee, bilateral knee pain of both knees, bone spurring in both knees, a history of Osgood-Schlatter disease, and a worsening condition "[o]ver the last 5 to 10 years."  Tr. 477.  This diagnosis is not inconsistent with Dr. Nenonene's opinion regarding Plaintiff's status, and Plaintiff had been diagnosed with many of these conditions in the February 2006 x-ray examination -- including bilateral knee pain, "signal abnormality across the patellar facet," chondromalacia, Osgood-Schlatter disease, and bone spurring.  Tr. 262-63, 477-78.  The April 23, 2008 x-ray results serve to bolster Dr. Nenonene's diagnosis, and do not conflict with his opinion, as the ALJ's decision asserts.  Tr. 378.  Additionally, the April 23, 2008 results acknowledged that Plaintiff's condition had worsened "in the last 5 to 10 years," a statement supporting Dr. Nenonene's assessment of total disability.  Tr. 477.

When, as here, the non-disability determination is unsupported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing, or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).  Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). However, the Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Such is the case here. As recounted herein, Plaintiff has already been established as disabled, however; the evidence of record supports an earlier onset date than that established by the ALJ. Like *Gayheart*, the ALJ in the case at hand relied only on the opinions of a non-treating, non-examining source in rejecting the opinion of Plaintiff's treating physician. *Gayheart* F.3d at 379. Plaintiff's treating physician's opinion should have been afforded more weight by the ALJ, as it is not inconsistent with the record as a whole. As such, the overall evidence of record supports an established onset date of February 8, 2006, coinciding with Plaintiff's MRI results showing disabling degeneration of his knees and Dr. Nenonene's assessment of disability. Tr. 262-63, 295.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignment of error meritorious, and the ALJ's decision unsupported by substantial evidence. The Court further finds that the record overwhelmingly establishes Plaintiff's entitlement to DIB and/or SSI benefits with an earlier onset date than that selected by ALJ Lombardo.

**IT IS THEREFORE RECOMMENDED THAT:**

1. ALJ Lombardo's selection of April 23, 2008 as Plaintiff's disability onset date be **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for an immediate award of DIB and/or SSI benefits with an onset date of February 8, 2006; and

3. This case be **CLOSED**.

January 9, 2013                                           **s/ Michael J. Newman**
                                                                                    United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).